**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN MICHIGAN**

MICHAEL LYNN,

    Plaintiff,

v.

    Case No.

    Hon.

CITY OF LANSING,

    Defendant.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

---

## **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, Michael Lynn (hereinafter "Lynn"), by and through his attorney's Scott P. Batey and the Batey Law Firm, PLLC, and for his Complaint against Defendant states as follows:

    1.    Plaintiff, Michael Lynn, is a resident of the City of Lansing, County of Ingham and State of Michigan.

    2.    Defendant, City of Lansing (hereinafter "Lansing") is a governmental entity duly authorized to do business in the County of Ingham and State of Michigan.

    3.    Jurisdiction and venue are proper in the District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

    4.    The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

5. Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful racial discrimination/harassment and retaliation in violation of 42 U.S.C. §1981 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. which resulted in emotional and economic damages to Plaintiff.

**GENERAL ALLEGATIONS**

6. Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

7. Plaintiff is an African-American make who began his employment with Defendant, Lansing on September 28, 2014 as a firefighter with the Lansing Fire Department ("Fire Department").

8. Plaintiff was hired as part of a program that Defendant was running to achieve diversity within members of the Fire Department.

9. Upon information and belief, in effort to achieve diversity within the Fire Department, Defendant Lansing changed qualifications needed to be considered for employment within the Department.

10. The change in qualifications caused current non-minority members of the Department to become resentful and hostile to Plaintiff and other employee, firefighters hired under the initiative.

11. As a result of the diversity program racial tension within the Department became visible and the work environment became increasingly hostile towards minorities including Plaintiff.

12. Plaintiff was constantly being targeted due to his race and creating a hostile work environment.

13. From the start of his employment Plaintiff was met with disdain and contempt by Caucasian firefighters who made daily comments about Plaintiff's race and qualifications and interfered with his ability to do his job that was targeted directly at Plaintiff by stating "we

2

shouldn't be hiring EMS" all of whom were African-American and "we shouldn't be hiring untrained" all of whom were African-American hired to promote diversity with the Fire Department.

14. Plaintiff followed Defendant's policy and made numerous verbal complaints to upper management that he was being discriminated against and harassed due to his race but nothing was done to stop the harassment or discrimination.

15. On or about March 14, 2017 Plaintiff arrived at Station 1 for work and relieved Firefighter Potter who gave him a report on the rig.

16. Plaintiff and Firefighter Scott ("Scott") had training that day so they discussed going to Station 9 to pick up their books for the training when Chief Deprez told them not to make a special trip to Station 9 and just pick up their books on the way to training.

17. Shortly after speaking with Chief Deprez they received a call.

18. As Plaintiff was getting into the rig to go on the run, he noticed a banana pinned between the windshield and wiper blade obviously placed there to harass and intimidate Plaintiff and Scott as African-Americans.

19. At about the same time Plaintiff noticed the banana, Chief Deprez stated to him "you know you got a banana on your windshield?"

20. Plaintiff, despite being upset about finding a banana on his windshield and Scott went on the call, stopped at Station 9, which was close to the hospital on the run, to pick up their books and returned to Station 1.

21. During the run and trip to Station 9 Plaintiff and Scott discussed who they would file the complaint with regarding the banana.

22. Scott also indicated he was upset and wanted to file a complaint.

23. Plaintiff and Scott decided they would file the report/complaint for racial discrimination for the banana intentionally being left on their windshield to harass and intimidate them as African-Americans with Captain Johnson.

24. Upon returning to Station 1 Plaintiff and Scott were immediately confronted about going to Station 9.

25. Plaintiff and Scott reported that Chief Deprez told them not to go to Station 9 at that time and not to make a special trip so they stopped by Station 9 after their run which was close to the station.

26. It was apparent that Chief Deprez was using the trip to Station 9 as a distraction, rather than deal with the far more serious issue of the banana on the windshield.

27. Plaintiff tried to file a complaint for racial discrimination, but Chief Deprez kept focusing on him and Scott going to Station 9.

28. Plaintiff told her he wanted the incident investigated and left upset because he felt like they were trying to intimidate him from filing a formal written complaint of racial discrimination.

29. Plaintiff was so upset and distraught that after complaining of racial discrimination for almost three years that the working conditions were actually becoming more offensive and hostile to the point where member(s) of the Department would put a banana on his windshield.

30. Captain Johnson recognized how upset and traumatized Plaintiff was and allowed him to go home.

31. Plaintiff went and sought medical leave for his stress, anxiety and depression due to the racial discrimination at work.

32. On or about March 15, 2017 Plaintiff went to Human Resources ("HR") to inquire about filing a written complaint for racial discrimination and he also met with his Union President, Eric Webber about filing a complaint for racial discrimination.

33. On or about March 20, 2017 Plaintiff had a meeting with Chief Talifarro to discuss racial discrimination in the Department.

34. On or about March 21, 2017 Plaintiff saw the EAP counselor for his complaint of stress, anxiety and depression due to the racial discrimination he was experiencing at work.

35. On about March 23, 2017 Plaintiff filed a formal complaint with HR for race discrimination and harassment claiming that he was being subjected to a hostile work environment due to his race.

36. Upon making his claims of racial discrimination under §1981, the ELCRA and Title VII Plaintiff was discouraged from making the complaints and asked "are you sure you want to do this."

37. In April, 2017 Plaintiff filed a Charge of Discrimination with the EEOC for discrimination based on race and retaliation.

38. On or about April 17, 2017 Plaintiff's FMLA leave was approved.

39. In May 2017 Plaintiff's FMLA leave was transitioned to paid Administrative leave as Defendant began to recognize the validity of Plaintiff's complaints.

40. On June 6, 2017 the EEOC issued a Right to Sue letter.

41. On or about June 13, 2017 Plaintiff had a meeting with employees, agents and representatives of Defendant, including Sue Graham, Mary Riley, Chief Talifarro and Chief Jenkins where he was told by them "we have issues" with racism within the Department.

42. Defendant pressed upon Plaintiff that it was doing what it could to address the racism within the Department and invited Plaintiff's input into solving the problem.

43. Plaintiff whose only real objective was to work in a harassment free environment was satisfied that Defendant was at least trying to do the right thing and stop the harassment so he let the Right to Sue letter expire without filing a Complaint.

44. Between June 2017 and September 2017 Plaintiff had multiple meetings with representatives and officials of Defendant, including members of HR to discuss ways to address the race problem within the Department.

45. On January 1, 2018 the new mayor of Lansing took office and it was apparent that addressing the Department's ongoing race problem was not a priority.

46. In February, 2018 Plaintiff received a letter from Defendant warning that his paid Administrative leave was about to end despite no solution to the race problems within the Department.

47. On March 16, 2018 Plaintiff returned to work and immediately became a target for racial discrimination, harassment and retaliation.

48. From April 2, 2018 to September 12, 2018 Plaintiff received five (5) unwarranted disciplinary actions in which his accuser's falsified facts, lied and conspired to have him receive disciplinary action.

49. On September 12, 2018 after receiving the fifth disciplinary action Plaintiff went on FMLA leave due to mental and emotional problems, including stress, anxiety and depression.

50. On or about October 3, 2018 Plaintiff filed a second Charge of Discrimination based on race and retaliation for the actions of Defendant not included in the initial Charge of Discrimination, including the five (5) disciplinary actions between April 2, 2018 and September 12, 2018 that were based on false facts and malicious lies intentionally designed to cause disciplinary problems for Plaintiff.

51. In December, 2018 Plaintiff exhausted his FMLA and was placed on the non-pay roster until he returned to work on light duty on January 7, 2019.

52. During the time period in question, Defendant, Lansing was Plaintiff's employer and Plaintiff was its employee within the meaning of the FMLA.

53. Defendant is responsible for all acts committed by its agents, representatives and employees within the scope of their employment.

54. Defendants, through their agents, representatives and employees, were predisposed to harass, discriminate and retaliate against Plaintiff on the basis of his race and acted in accordance with that predisposition.

55. Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

56. Plaintiff is still awaiting the Right to Sue letter to be issued by the EEOC and will file a Motion to Amend his Complaint upon receipt to add allegations under Title VII.

## COUNT I
## RACIAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF 42 U.S.C. §1981

57. Plaintiff incorporates by reference paragraphs 1 through 56 of the Complaint as though fully set forth herein.

58. Plaintiff belongs to a protected class as an African American.

59. Plaintiff was subjected to unwelcome communication and conduct due to his race.

60. The racially charged conduct towards Plaintiff was unwelcome.

61. Defendant's conduct was intentional and motivated by Plaintiff's race as an African-American.

62. The conduct was so severe and/or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

63. Plaintiff believed his work environment to hostile and abusive as a direct result of Defendant's conduct.

64. Plaintiff suffered adverse tangible employment actions as a result of the hostile work environment.

65. The ongoing and continuing unwelcome conduct and communication was intended to and did substantially interfere with Plaintiff's employment and/or created an

intimidating, hostile, or offensive work environment for Plaintiff and Plaintiff was ultimately terminated due to his race.

66. Pursuant to 42 U.S.C. §1981 Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation, including termination from his employer and/or supervisors based upon his race.

67. Plaintiff's race was a factor in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

68. Plaintiff was subjected to repeated and continuous discriminatory treatment, up to and including termination based upon his race by Defendant, to the point where his status as an employee has been detrimentally affected by Defendant and Plaintiff has been subjected to work in a hostile work environment.

69. Plaintiff is entitled to punitive, exemplary and compensatory damages pursuant to 42 U.S.C. §1981 as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

70. Because of the unlawful conduct of Defendants, their agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest, and attorney fees and any other relief this Honorable Court deems appropriate and just.

## COUNT II
## RACIAL DISCRIMINATION AND HARASSMENT IN VIOLATION OF
## MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCLA 37.2201, *et seq*

71. Plaintiff incorporates by reference paragraphs 1 through 70 of the Complaint as though fully set forth herein.

72. Plaintiff belongs to a protected class as an African American.

73. Plaintiff was subjected to unwelcome communication and conduct.

74. The ongoing and continuing unwelcome conduct and communication was intended to and did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff and Plaintiff was ultimately terminated due to his race.

75. Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*. Plaintiff was guaranteed the right to be free from discriminatory treatment and harassment and/or retaliation, including termination from his employer and/or supervisors based upon his race.

76. Plaintiff's race was a factor in Defendant's decisions, actions, treatment, conduct and attitude towards Plaintiff.

77. Plaintiff was subjected to repeated and continuous discriminatory treatment, up to and including termination based upon his race by Defendant, to the point where his status as an employee has been detrimentally affected by Defendant and Plaintiff has been subjected to work in a hostile work environment.

78. Plaintiff is entitled to exemplary and compensatory damages pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*. as a result of each and every violation of the act, including costs and reasonable attorneys' fees.

79. Defendants created an offensive and hostile work environment against Plaintiff as a direct result of Plaintiff's race by reason of the following acts and/or omissions:

    a. Violating the laws against discrimination by engaging in racial discrimination in the workplace;

    b. Imposing discipline based on race;

    c. Taking adverse employment action against Plaintiff based upon his race;

    d. Preventing Plaintiff from having full and fair opportunities to advance in his position based upon his race; and

  e. Creating a hostile work environment for Plaintiff by discriminating against him, harassing him, and retaliating against him due to his race.

80. Defendants owed Plaintiff as an African-American employee, a duty to refrain from discriminating against employees.

81. Defendants owed Plaintiff as an African-American, a duty to refrain from discriminating against him, harassing him and treating him differently as a direct result of his race.

82. Defendants breached and violated their duties owed to Plaintiff, by reason of the following acts and/or omissions:

  a. Failing to screen and place in supervisory positions, persons who would be capable of being competent and law abiding supervisors, and with particular reference to enforcing laws against discrimination in the workplace;

  b. Giving supervisory authority to persons who were known to have propensities as would make them unfit to serve in the capacity of supervisor over employees;

  c. Failing to properly educate and train its employees and supervisors, particularly with reference to the unlawfulness of discrimination in the workplace; and

  d. Failing to properly warn or advise its employees and supervising personnel to refrain from discriminating against employees.

83. As a direct and proximate result of the actions of Defendants, Plaintiff was the subject of discriminatory conduct on the part of Defendants.

84. Because of the unlawful conduct of Defendants, their agents, representatives and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

## COUNT III
## RETALIATION

85. Plaintiff incorporates by reference paragraphs 1 through 84 of the Complaint as though fully set forth herein.

86. Pursuant to 42 U.S.C. 1981, §Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*, Plaintiff is guaranteed the right to be free from discrimination from his employer and/or supervisors based upon his race.

87. Plaintiff's race was a factor in Defendant's employment decisions.

88. Defendant was Plaintiff's employer within the meaning of 42 U.S.C. 1981, Title VII and the Elliott-Larsen Civil Rights Act, MCLA 37.2201, *et seq*.

89. During the course of his employment with Defendant, Plaintiff was subjected to constant unwelcome racial discrimination creating a hostile work environment by Defendant.

90. The racial discrimination created a hostile work environment and had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

91. Plaintiff complained to upper management of Defendant that he was being discriminated against due to his race and that he was being subjected to a hostile work environment.

92. Defendant had actual and constructive notice that it was creating an intimidating, hostile and offensive work environment for Plaintiff.

93. Despite having notice of the racial discrimination and conduct toward Plaintiff, Defendant failed to take any remedial action, but instead took adverse employment action against Plaintiff based upon his race and in retaliation for his complaints of racial discrimination.

94. The racial discrimination and conduct by Defendant and Defendant's failure to take any remedial action violate 42 U.S.C. 1981, Title VII and the Michigan Elliott- Larsen Civil Rights Act, MCL 37.2101 *et seq*.

95. As a proximate result of the Defendant's retaliation of Plaintiff, Plaintiff has sustained injuries including, but not limited to, physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, outrage, anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate and just.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

Dated: January 14, 2019

## **DEMAND FOR JURY TRIAL**

NOW COMES, Plaintiff, Michael Lynn, by and through his attorney's, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

Dated: January 14, 2019